FILED
9/24/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
AXM

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VALERY BARYKIN,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-11729

Judge Jorge L. Alonso

Magistrate Judge Jeannice W. Appenteng

**1:26-cv-14690
Judge Jorge L. Alonso
Magistrate Judge Jeannice W. Appenteng
DIRECT**

**PLAINTIFF'S MEMORANDUM ESTABLISHING
JOINDER UNDER FED. R. CIV. P. 20**

Plaintiff Valery Barykin ("Barykin" or "Plaintiff") is a professional artist whose illustrations are protected by U.S. Copyright Registration Nos. VA 2-476-703, VA 2-476-707, VA 2-476-708, VA 2-476-709, and VA 2-476-710 (the "Valery Barykin Works"). [1] ¶¶ 3, 5, 8 & Ex. 1. Fifty-one anonymous storefronts on Amazon, Walmart, Temu, and Shein reproduced and displayed the Valery Barykin Works without authorization, around the same time, on products offered to U.S. consumers online. [2]; **Exhibit 1**. The overlap among them is not generic. Forty-eight of the 51 stores sell one of just five derivative designs built from three of the Works, and forty-three of them add one of four slogans: seventeen sell Barykin's chemist illustration captioned "Never Underestimate an Old Women Who Loves Science," grammatical error and all, and eighteen sell his hairdresser illustration captioned "Just a Girl Who Loves Making Others Feel Awesome." Exhibit 1. Each group repeats the same image, slogan, and layout, often under nearly identical listing titles; eight pairs of stores share a brand name; and many copy the same product description verbatim, one across groups. *Id.*; [13-1].

Pursuant to the Court's September 29, 2026, Order [15], Plaintiff respectfully submits this memorandum addressing the propriety of joinder. Three points frame Plaintiff's showing. First, this record supplies the specific factual connection that *Cuomo v. P'ships*, No. 26 C 7119, Dkt. 19 (N.D. Ill. July 28, 2026) (Alonso, J.), found missing among the Weezer T-shirt sellers: matching designs, slogans, brand names, and listing language tying the storefronts within each group to one another. Second, Plaintiff asks the Court to find joinder proper as to all 51 Defendants or, at a minimum, as to each design group. Third, should the Court find any Defendant misjoined, Plaintiff asks that the claim be severed on the existing record rather than dismissed, because dismissal would multiply Plaintiff's costs and threaten its ability to serve Defendants and reach judgment, while joinder imposes no harm the Court could not cure later. Plaintiff respectfully requests the Court's guidance on how it wishes Plaintiff to proceed.

## ARGUMENT

Under Rule 20(a)(2), multiple defendants may be joined in a single action if: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there is at least one question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). The purpose of Rule 20(a) "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Like every Rule, it must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged.").

## I. The Record Establishes the Specific Factual Connection Among the Storefronts That *Cuomo* Requires, and the Claims Are Logically Related

*Cuomo* sets the standard this memorandum must meet. Joinder is proper, the Court explained, where "Schedule A plaintiffs can show that certain defendants are commonly owned or are working in concert, based on specific factual allegations." *Cuomo*, Dkt. 19, at 5. Absent "some specific showing that the defendants' infringing activities are likely to be factually connected," the defendants are misjoined. *Id.* at 2. This record makes that specific showing.

The connection is visible on the face of the listings. Every accused product reproduces one of Barykin's registered illustrations, and 48 of the 51 stores sell one of just five derivative designs built from three of them: the chemist illustration (VA 2-476-707) captioned "Never Underestimate an Old Women Who Loves Science" (17 stores, repeating the same grammatical error in the design and, on Amazon, in every listing title) or "In a World Full of Princesses Be a Scientist" (3); the hairdresser illustration (VA 2-476-703) captioned "Just a Girl Who Loves Making Others Feel Awesome" (18) or "She Works Willingly with Her Hands, Proverbs 31:13" (5); and the same crop of the boating illustration (VA 2-476-708) under matching listing titles (5). Exhibit 1; *see* Groups 1–5, *infra*. Within each group, the stores repeat the same image, slogan, and layout, often under nearly verbatim titles. Many go further. Eight pairs of separately named stores sell under the same brand name with matching listing titles, and seven of those pairs also copy the same product description word for word: Def. Nos. 1 and 3 ("TFERQH"), 6 and 9 ("XYHTJDK"), 10 and 11 ("IKSHFD"), and 14 and 15 ("Wourfswqt") in the chemist group; 18 and 19 ("SGCUWS"), 20 and 21 ("XMXFC"), and 22 and 23 ("PEVEVW") in the hairdresser group; and 30 and 31 ("TRUSHZR") in the boating group. [13-1] at 2, 4, 7, 10–12, 15–16, 19–24, 31–32. Def. No. 12 in the chemist group also shares an identical description with Def. Nos. 22 and 23 in the hairdresser group ("Easy To Hang: This Lightweight Metal Tin Sign Comes With Predrilled Holes. Easy To

Install On Walls, Doors Or Fences."). *Id.* at 13, 23–24. That shared copy crosses the slogan line, suggesting a connection between the two largest groups as well as within each. The products point the same way across all four slogan groups (Groups 1–4). Their 43 stores sell the same vintage-style metal sign, most an 8-by-12-inch size, and each of the four designs is prepared the same way: the slogan split between a banner across the top and across the bottom, set in the same heavy, all-capital lettering, over a Barykin illustration finished with edges that give the sign an aged look. Exhibit 1; [13-1].

Shared supplier artwork might explain an isolated similarity, but this combination of slogan, composition, brand name, and product copy, repeated across platforms, is more specific. And to the extent a common supplier accounts for the overlap, a common source is itself probative of connection. *In re EMC Corp.*, 677 F.3d 1351, 1359–60 (Fed. Cir. 2012). That convergence, down to a shared grammatical error, is the "unique word and sentence construction" and the "same misspellings or grammar mistakes" from which courts in this District have inferred "that the subset of online retailers using those same images or those same descriptions are connected to one another." *Estée Lauder Cosmetics Ltd. v. P'ships*, 334 F.R.D. 182, 188 (N.D. Ill. 2020).

Many stores also bear transliterated names describing businesses with nothing to do with pin-up art: family farms and agricultural companies (Nos. 1, 6, 7, 14, 15, 35), a grain-and-oil processor (No. 27), and construction and engineering firms (Nos. 3, 11, 18, 31). The names also track the groups: three chemist-group stores use the same county-name, personal-name, family-farm template (Nos. 6, 7, 14), and two hairdresser-group stores use the same "[name]-SHOP" format (Nos. 19, 21). [2]; Exhibit 1. Defendants "attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation." [1]

¶ 7. That concealment is how the operation functions, and why direct proof of common ownership lies within Defendants' exclusive control.

This is the showing *Cuomo* found absent. There, "[t]he designs on the T-shirts [did] not look remotely alike, except that they use[d] the word 'Weezer,'" and "none of these seven T-shirt sellers use[d] terminology or phrasing that matche[d] any of the other six." *Cuomo*, Dkt. 19, at 4. The Weezer sellers shared a single word and nothing more. Here, the storefronts within each group share the copyrighted image itself, the same added slogan where there is one, a common layout, and matching listing text, and many share a brand name or, in the largest group, the same grammatical error, exactly the "unique word and sentence construction" that *Estée Lauder* treats as evidence of connection. 334 F.R.D. at 188. The difference between a shared word and a shared, verbatim listing is the difference *Cuomo* drew.

The five design groups account for 48 of the 51 stores. The remaining three (Def. Nos. 34, 35, and 48) infringe the same artist on the same marketplaces, but Exhibit 1 does not tie them to any design group through matching listing language. As to those three, the connection is the shared infringement of the same artist and the shared marketplaces, not matching slogans. Plaintiff recognizes that, under *Cuomo*, that showing may not suffice, and Part IV proposes individual severance, not dismissal, for any storefront the Court finds lacks a sufficient factual link. The storefronts thus fall into six groups, keyed to Exhibit 1:

> **Group 1 — "Never Underestimate an Old Women Who Loves Science" (17 storefronts).** Same registered chemist illustration (VA 2-476-707), same added slogan and grammatical error, same layout, and matching Amazon listing titles, sold across Amazon and Temu. *See* Exhibit 1 (Def. Nos. 1–15, 37–38).
>
> **Group 2 — "Just a Girl Who Loves Making Others Feel Awesome" (18 storefronts).** Same registered hairdresser illustration (VA 2-476-703), same added slogan, same layout, and, in many listings, matching titles, sold across Amazon, Temu, and Shein. *See* Exhibit 1 (Def. Nos. 18–23, 26–29, 40–44, 47, 50–51).

**Group 3 — "She Works Willingly with Her Hands, Proverbs 31:13" (5 storefronts).** Same hairdresser illustration and same added slogan, sold across Amazon, Temu, and Shein. *See* Exhibit 1 (Def. Nos. 24–25, 45–46, 49).

**Group 4 — "In a World Full of Princesses Be a Scientist" (3 storefronts).** Same chemist illustration and same added slogan, sold on Amazon and Temu. *See* Exhibit 1 (Def. Nos. 16–17, 39).

**Group 5 — Boating illustration (5 storefronts).** Same registered illustration (VA 2-476-708) in the same crop, sold under matching "Olde America" puzzle and "Sexy Pub Girl with Wine Poster" listing titles on Amazon and Walmart. *See* Exhibit 1 (Def. Nos. 30–33, 36).

**Group 6 — Remaining storefronts (3).** The Valery Barykin Works and the same online channels, but no common added slogan or matching listing language tying them to Groups 1 through 5. *See* Exhibit 1 (Def. Nos. 34, 35, 48).

On these facts, the stores within each design group satisfy the specific, listing-level showing *Cuomo* requires and establish the logical relationship that Rule 20 demands.

The governing law confirms what the listings show. Rule 20 permits joinder of defendants against whom relief is sought "jointly, severally, or in the alternative," Fed. R. Civ. P. 20(a)(2)(A), and it authorizes judgment "against one or more defendants according to their liabilities," Fed. R. Civ. P. 20(a)(3). The Rule thus requires no joint liability. In *United States v. Mississippi*, the Supreme Court reversed a district court that had refused to let six county registrars be sued together for "individual torts committed by them separately with reference to separate applicants," holding that "the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a)." 380 U.S. 128, 142 (1965). Independent actors satisfy Rule 20 when their claims bear a "logical relationship" to one another. *EMC*, 677 F.3d at 1358; *see In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994); *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). "[A]n allegation of joint liability is not required," and "the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'" *EMC*, 677 F.3d at 1356.

The test requires an "actual link" between the facts underlying each claim, and *EMC* identifies the considerations that show one, including whether the infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, and overlap in the products' development and manufacture. *Id.* at 1359–60. Each points the same way here. The storefronts displayed the Valery Barykin Works around the same time. [2]; [13-1]; Exhibit 1. Within each design group, they sell the same design, and many repeat brand names and product descriptions word for word, text that independent sellers would not each have written on their own. [13-1]. That shared design, copy, and sign template support an inference of a common source or overlapping product development, and the description that crosses the slogan line points to some relationship among the stores themselves. Those facts supply the logical relationship within each group and satisfy the first inquiry under Rule 20.

## II. Every Claim Presents the Same Questions of Law and Fact

Rule 20's second requirement, that "any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2)(B), is readily met. The Rule "does not require that *all* questions of law and fact raised by the dispute be common." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974) (emphasis added). Every Defendant did the same thing: each published one of the registered Valery Barykin Works on an online listing displayed to consumers in this District, and each listing was captured and preserved. [13-1]; Exhibit 1. Each claim turns on the same questions: whether Plaintiff owns valid copyrights, whether the Defendant's use infringes them, whether the infringement was willful, and what remedies apply under 17 U.S.C. §§ 502, 504, and 505. That Defendants sold different products at different prices matters no more than the "different effects" of a common policy did in *Mosley*, which were "immaterial for the purposes of determining the common question of law or fact." 497 F.2d at 1334.

## III. *Cuomo* Does Not Foreclose Joinder of These Copyright Claims

### A. The Record Satisfies the Logical-Relationship Test *Cuomo* Applied

*Cuomo* dismissed a Lanham Act complaint for misjoinder after holding that "occurrence" means no more than "transaction," so that the logical-relationship test governs, and after finding that the *Bose* "swarm" approach lacked a "limiting principle." *Cuomo*, Dkt. 19, at 1, 3–4 (discussing *Bose Corp. v. P'ships*, 334 F.R.D. 511, 516 (N.D. Ill. 2020)). Plaintiff's showing does not depend on the broad reading of "occurrence" that *Cuomo* rejected. It rests on the logical-relationship test *Cuomo* applied, under which "independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action," *id.* at 4 (quoting *EMC*, 677 F.3d at 1358), and that test is satisfied here by the matching designs and listing language set out in Part I. That test, applied to listing-level overlap of this kind, supplies the limiting principle *Cuomo* found missing: it reaches stores whose listings share specific, overlapping facts, not every seller of the same work.

### B. The Copyright Act Confirms That Separately Liable Infringers May Be Joined

The Copyright Act confirms that the absence of joint liability is no obstacle to joinder. Like Rule 20, the Act contemplates that separately liable infringers may be sued together. Statutory damages are awarded "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1). The House Report explains that "*where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate*." H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778, *quoted in Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946–47 (9th Cir. 2011) (emphasis added). The number of awards thus turns on the number of works infringed and the number of individually liable infringers, not

on whether the infringers coordinated. *Accord Sullivan v. Flora, Inc.*, 936 F.3d 562, 566–67 (7th Cir. 2019); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (statutory damages turn on "the number of works infringed, not the number of infringements").

Read together, the Rule and the statute separate two questions that the joinder inquiry can conflate: who may be sued together, and how many awards follow. The first turns on the logical relationship shown in Part I. The second turns on ownership: common ownership identifies which storefronts collapse into a single infringer, jointly and severally liable for one award per work; separate ownership means a separate award per work against each. Once the claims are logically related, Rule 20 permits them to proceed together whichever way ownership falls, "according to their liabilities." Fed. R. Civ. P. 20(a)(3). Section 504 thus confirms that the absence of joint liability is no bar to joinder; it does not itself supply the factual connection Rule 20 requires.

The statute also bears on the drug-dealer and concert-vendor analogies of *Anagram* and *Toyota*. *See Cuomo*, Dkt. 19, at 4–5 (quoting both). To the extent those analogies suggest that defendants belong in one suit only if they cooperate with one another, the Copyright Act, like Rule 20, assumes otherwise. It contemplates that one action may include both infringers who are "liable individually" and infringers who are "liable jointly and severally," and it calibrates the remedy to each: a separate award per work against each individually liable infringer, and a single shared award per work against each jointly liable group. 17 U.S.C. § 504(c)(1); H.R. Rep. No. 94-1476, at 162. But the statute does not supply the factual link Rule 20 requires; Part I does.

C. <u>Each Claim Inflicts the Same Harm on a Single Owner's Market</u>

The nature of the harm also answers the concern that each Defendant presents only an "individualized dispute with Plaintiff over whether it has the right to sell products" without "paying Plaintiff a licensing fee." *Cuomo*, Dkt. 19, at 4. Barykin does not merely license a band name. He is a working artist whose illustrations have been exhibited, offered at auction, and

published in outlets such as *Playboy* and *Men's Health*, [1] ¶ 8; he markets his Soviet pin-up work through his own website and online shop, *id.* ¶ 9; *Shop*, Soviet Pin-Up, https://barykin-pin-up.ru/#/shop/ (last visited Oct. 16, 2026); and no one other than Barykin and his licensees is authorized to create derivative works from them or sell goods using them, *id.* ¶ 15. Each unauthorized copy therefore costs Barykin "control over the creative content of the valuable copyrights" and the "ability to license" them, *id.* ¶ 7, and erodes the value of the work itself.

Defendants bring about that harm the same way: each infringer "take[s] advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [the plaintiff's copyrights] with impunity." *Neman Bros. & Assocs., Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 24 C 05666, Dkt. 112, at 1–2 (N.D. Ill. Jan. 23, 2025) (quoting *Bose*, 334 F.R.D. at 516); *see also Zou v. Entities*, No. 23-cv-16600, Dkt. 60, at 2 (N.D. Ill. Mar. 8, 2024) (Kendall, J.) (finding "a clear logical relationship between Defendants' actions, as each Defendant copied [Plaintiff's] work . . . and set up online stores to sell the counterfeits under a cloak of anonymity"). That conduct converges on a single artist, and the *Neman* court recognized it as the "surreptitious conduct that is the 'defining aspect of the harm'" and that "creates a logical relationship among the parties and claims." *Neman*, Dkt. 112, at 2. The harm, concentrated on a single artist's market and inflicted by many hands at once, is why the claims belong together rather than in 51 separate suits.

D. The Court's Remaining Authorities Involved Different Records

The Court's remaining authorities describe different cases. *Tang* arose under the patent-specific joinder statute, which bars joinder "based solely on allegations that [defendants] each have infringed the patent," 35 U.S.C. § 299(b); the shared words and images there were "generally descriptive of the function" of the product; and the two defendants at issue had appeared and were "defending the case in earnest," the very circumstance in which courts have contemplated

severance. *Tang v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 4587, 2024 WL 68332, at *1–3 (N.D. Ill. Jan. 4, 2024). The same opinion reaffirmed that "joinder of multiple alleged counterfeiters . . . is proper under Rule 20" where a swarm descends on a single rights holder. *Id.* at *3. *Anagram*, as *Cuomo* quotes it, rejected joinder of sellers linked only by "the same unlawful activity in the same general vicinity." *Cuomo*, Dkt. 19, at 4–5. Barykin relies on far more than shared activity in a shared space: a verbatim overlap in infringing design, brand names, and listing text concentrated on a single artist's copyrighted works.

Finally, the practical concern that drove *Cuomo*, that defendants "appear, often individually or in small groups, taking disparate positions," *Cuomo*, Dkt. 19, at 3, has a built-in remedy that requires dismissing no one now. Should any Defendant appear and take a position that differentiates it from the others, Rule 21 permits the Court to sever that Defendant at that time, without disturbing the claims against the rest. Fed. R. Civ. P. 21. Keeping Defendants together thus preserves every option the Court has. *See* Part IV, *infra*.

E. Any Remedy for Misjoinder Should Be Severance, Not Dismissal

If the Court concludes that some or all Defendants are not properly joined, the question becomes remedy. *Cuomo*'s procedure was to dismiss without prejudice and grant leave to replead against a single defendant or a properly joined smaller group. *Cuomo*, Dkt. 19, at 1, 5. Rule 21 supplies a path to the same end without the collateral harm dismissal carries: "Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. The Rule instead allows the Court, "on just terms, [to] add or drop a party," or to "sever any claim against a party." *Id.*

The two options are not equivalent, and the difference matters here. A dropped defendant is dismissed, and the complaint against it treated "as if it never existed." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (internal quotation marks omitted). A severed claim, by contrast, is

not dismissed: "the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018) (quoting *Lee v. Cook Cnty.*, 635 F.3d 969, 971 (7th Cir. 2011)). The Seventh Circuit therefore requires a court "to avoid gratuitous harm to the parties" in remedying misjoinder, and to sever rather than dismiss where dismissal would carry adverse consequences. *Elmore*, 227 F.3d at 1012; *see Dorsey v. Varga*, 55 F.4th 1094, 1108 (7th Cir. 2022).

Severance on the existing record is the better course here for concrete reasons. Dismissal would require Plaintiff to refile as many as 50 new complaints and move anew for expedited discovery, electronic service, and injunctive relief in each. More importantly, delay gives anonymous sellers who can "simply pop up somewhere else" the opening to vanish before Plaintiff can serve them, subpoena marketplace and payment records of their sales, or obtain a judgment. *Bose*, 334 F.R.D. at 517. Severance avoids the most serious of these harms: a severed claim keeps its original filing date because it "simply continues against the severed defendant in another guise," *DirecTV*, 467 F.3d at 845, and, subject to the Court's orders, the existing record and Plaintiff's motion for expedited discovery [12], once re-noticed, can carry forward without starting over. That is why courts in this District routinely sever rather than dismiss misjoined infringement claims. *Roadget Bus. Pte. Ltd. v. Individuals*, 735 F. Supp. 3d 981, 986–87 (N.D. Ill. 2024) (severing, rather than dismissing, misjoined defendants); *Laika, LLC v. P'ships*, 833 F. Supp. 3d 918, 920 (N.D. Ill. 2026) ("Dismissal as a remedy here is inappropriate. Rule 21 militates against it, as does *Elmore*'s command to avoid 'gratuitous harm' to the plaintiff.").

If the Court declines to keep all 51 Defendants together, the natural unit is the design group or common operator. That approach mirrors the model *Cuomo* cited with approval, the District of New Jersey's standing order directing that, "[t]o satisfy Rule 20, each complaint shall consist of a

single defendant or group of defendants acting under the same operator." *Cuomo*, Dkt. 19, at 5 n.1 (quoting *In re: "Schedule A" Cases*, Standing Order 2025-04 ¶ 1 (D.N.J. Sept. 25, 2025)). Plaintiff's alternative request follows the same approach, although a design group is defined by shared listing content rather than by a proven common operator: sever each design group (Groups 1 through 5, as set out in Part I) into its own case as a properly joined group, with the record transferred, and, as to any remaining Defendant the Court finds lacks a sufficient factual link to any group, sever the claim against that Defendant individually on the existing record rather than dismiss it. And because the description shared by Def. Nos. 12, 22, and 23 links the two largest groups, and Groups 1 through 4 sell the same vintage metal sign with the same aged finish, the Court could keep Groups 1 and 2, or all four slogan groups (43 stores), together in a single case. Each group shares the logical relationship Rule 20 requires: the same derivative design, the same added slogan where there is one, and matching listing content. Once that relationship exists, it does not matter that some storefronts within a group may share an operator and others may not. *See* Parts I, III.B, *supra*.

Whether by dismissal or by severance, fragmenting properly joined claims further carries real costs. Each severed action would repeat every step from complaint to default judgment, including service, motion practice, and the default proceedings themselves, and would carry its own filing fee and, if injunctive relief were sought, its own bond. *See* 28 U.S.C. § 1914; Fed. R. Civ. P. 65(c). Plaintiff would also be forced to litigate identical ownership, copying, willfulness, and remedy questions storefront by storefront, "a multiplication of expense that would further inhibit [its] ability to protect its legal rights." *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 253 (N.D. Ill. 2011). Those costs are not offset by any prejudice to Defendants from joinder. Each keeps every defense; joinder neither merges claims nor dilutes defenses, and any trial-

management concern has its own remedy in separate trials under Rule 42(b), not dismissal or severance now. *Elmore*, 227 F.3d at 1012; Fed. R. Civ. P. 42(b). Courts have recognized as much, declining to force plaintiffs to splinter a single infringement action into dozens of separate suits. *Laika*, 833 F. Supp. 3d at 921 (declining severance even as to appearing, represented defendants because "it makes sense" to litigate the claims together); *Milwaukee Elec. Tool Corp. v. Individuals*, No. 24 C 12487, Dkt. 156, at 7 (N.D. Ill. May 28, 2025) ("Forcing Plaintiff to file separate cases against 80 different defendants would be an undue burden"). Joinder prevents the very "substantial duplication of effort and time by the parties and the courts" that the logical-relationship test exists to avoid. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 390 (3d Cir. 2002) (internal quotation marks omitted). Resolving the common questions once, in a single action, is what Rules 20 and 1 exist to secure.

The balance of harms under Rule 21's "just terms" standard favors keeping properly joined Defendants together, largely because the two possible errors are not equally correctable. If the Court keeps Defendants together and a Defendant later appears and shows that its position differs from the rest, the Court can sever that Defendant then, and can order separate trials if trial requires it. Fed. R. Civ. P. 21, 42(b). Dismissal, by contrast, would require Plaintiff to repeat each step toward judgment in new cases, and the combined cost of as many as 51 separate suits could approach or exceed any realistic recovery. *See Elmore*, 227 F.3d at 1012. Delay also gives anonymous sellers time to rename or abandon storefronts and take down the listings that identify them. *See Bose*, 334 F.R.D. at 517. Plaintiff does not minimize the Court's case-management concerns; Rules 21 and 42(b) remain available to address them as the case develops. But dismissal at this stage would risk precisely the "gratuitous harm" *Elmore* directs courts to avoid. 227 F.3d at

1012. Should the Court nonetheless decline to keep all 51 Defendants together, Plaintiff asks that it sever rather than dismiss, as set out above.

## CONCLUSION

This record supplies the specific, listing-level factual connection *Cuomo* requires: 48 of the 51 storefronts reproduce one of just five derivative designs built from three registered works, repeating the same image, slogan, and listing language across four marketplaces. Eight pairs share a brand name, many copy the same product description word for word, and one description crosses from the chemist group to the hairdresser group. Those claims are logically related, present common questions, and the Copyright Act confirms that separately liable infringers may be joined in one action. Accordingly, Plaintiff respectfully requests that the Court:

(1) find joinder of all 51 Defendants proper under Rule 20(a)(2);

(2) in the alternative, sever Groups 1 through 4 (43 Defendants), which share a common product template, into a single case and Group 5 into its own case, or, failing that, sever each design group into its own case; sever any remaining Defendant individually; and transfer the existing record to each new case;

(3) dismiss no Defendant; and

(4) grant Plaintiff leave to re-notice its motion for expedited discovery [12].

Plaintiff respectfully requests the Court's guidance on how it wishes Plaintiff to proceed. All unpublished decisions cited herein without a Westlaw citation are attached as **Exhibit 2**.

DATED: October 16, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on October 16, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt